UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE TRUJILLO, as Guardian Ad Litem for KADEN PORTER, a minor, on behalf of himself and others similarly situated, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> AMETEK, INC., a Delaware corporation; SENIOR OPERATIONS, LLC, a limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | Civil No.   15cv1394 GPC (BGS) <br><br> **ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SANCTIONS AND PRESERVATION** <br><br> **[ECF No. 31.]** |

## I. Introduction

On November 20, 2015, the Honorable Gonzalo P. Curiel, referred Plaintiffs'

Motion for Sanctions and Preservation to the Honorable Bernard G. Skomal, United State

Magistrate Judge, for decision. [ECF Nos. 45-46.]  In their motion, Plaintiffs seek

sanctions for Defendant Ametek's failure to collect initial emissions results from six sub

slab depressurization ("SSD") systems[1] at the Magnolia Elementary School.  [ECF No.

31-1 at 3:13-16.]  Plaintiffs claim they were never notified of the date the SSD systems

would be activated and because Ametek did not collect emission samples or install

---

[1]Sub slab depressurization systems are designed to remove toxic vapors from underneath the foundations of buildings.  Declaration of Plaintiffs' expert, Anthony Brown, ECF No. 31-3 at ¶8.

sample ports in the SSD system, initial emissions results that could have revealed the conditions at Magnolia Elementary prior to remediation can never be recovered. *Id.* at 4:19-5:3. The sanction requested by Plaintiffs is an adverse inference jury instruction. Plaintiffs also seek a preservation order requiring Ametek to provide Plaintiffs' counsel with notice of remediation efforts. Ametek filed an opposition to Plaintiffs' motion on October 30, 2015. [ECF No. 40.] Plaintiffs filed a reply on November 13, 2015. [ECF No. 42.]

After careful consideration of the parties' briefs, exhibits and declarations, the Court **GRANTS IN PART and DENIES IN PART** Plaintiffs' motion for the reasons explained herein.

## II. Factual Background

This case arises out of the dumping by Ametek and its predecessors of toxic waste into a temporary waste storage tank on property adjacent to Magnolia Elementary School. [ECF No. 21.] In their First Amended Complaint, Plaintiffs allege Defendants discharge of waste on the Ametek property caused waste plumes to concentrate beneath Magnolia Elementary and that various chemicals contained in those waste plumes have been found by federal agencies to have toxic health effects. *Id.* at 8, 20-22.

The impact to soil and groundwater at Magnolia Elementary and other areas adjacent to the former Ametek facility has been assessed since 1994. *See* Declaration of Ametek's expert, Truong Mai, ECF No. 40-1 at ¶ 8. These investigation activities at Magnolia Elementary are overseen by the California Department of Toxic Substance Control - School Property Evaluation and Cleanup Division. Samples of soil vapor, groundwater, outdoor air and indoor air have been collected from sampling locations at Magnolia Elementary over the course of the last 20 years. *Id.* at ¶ 8-9.

Ametek recently agreed to install sub slab depressurization ("SSD") units at four of the permanent classrooms at Magnolia Elementary and air exhaust system ("AES") units at two of the mobile classrooms at Magnolia Elementary as a pilot test in order to gauge the efficacy of SSD and AES units on vapor intrusion into classrooms. *Id.* at ¶ 14. The

California Department of Toxic Substance Control also oversees the pilot tests.  *Id.*

Specifically, the SSD units are designed to remove vapors from beneath the foundation of the permanent classrooms.  *Id.* at ¶ 17.  The AES units are designed to exhaust air in the space between the floor of the mobile classroom and ground.  *Id.* at ¶ 17.  Measurements of pressure and vacuum data are being collected during the pilot testing because the SSD and AES units were primarily designed to remove air from underneath classrooms effectively.  *Id.* at ¶ 18.  Chemical data has not been recorded through the SSD and AES units.  *Id.*  However, a sampling and monitoring port were installed beneath the pipes of the SSD and AES units which could be used to collect samples for chemical analysis.  *Id.* at ¶ 19.

On June 1, 2015, three days after Plaintiffs filed their state court complaint,[2] Magnolia Elementary School was closed by the Board of Governors of the Cajon Valley Union School District for the 2015-2016 school year because of the risk of toxic vapor intrusion into the classrooms there.  [ECF No. 21 at 1.]

On June 25, 2015, Plaintiffs' counsel sent a preservation letter via email to counsel for Ametek,[3] counsel for Senior Operations[4] and counsel for the Cajon Valley Union School District[5] requesting "current property conditions" be maintained at Magnolia Elementary School until a meet-and-confer regarding testing and inspection could be completed.  [ECF No. 31-4, Exh. A at 2.]

On August 3, 2015, Plaintiffs' counsel sent a second preservation letter via email to counsel requesting no additional or new remediation work be done at a different location called the "Ketema/Ametek property" without notification and an opportunity to

---

[2]This matter was removed to federal court by Defendant Senior Operations LLC. *See* Notice of Removal at ECF No. 1.

[3]Ametek's counsel listed on the 6/25/15 email are Edward C. Walton, Esq., and John J. Lormon, Esq.

[4]Senior Operations' counsel listed on the 6/25/15 email are Robert J. Parks, Esq. and Kimberly Arouh, Esq.

[5]Cajon Valley Union School District's counsel listed on the 6/25/15 email is Kelly Richardson, Esq.

inspect or test.  *Id.,* Exh. B at 4.

On August 18, 2015, Ametek's counsel responded to both of Plaintiffs' preservation emails by noting that access to the "Magnolia site" needed to be coordinated with the School District's counsel and access to the "Ketema site" needed to be arranged with the counsel for co-defendant Senior Operations, LLC.  *Id.*, Exh. C at 7.

On August 26, 2015, Plaintiffs' counsel alerted opposing counsel that the Cajon Valley School District was making Magnolia Elementary available for a site inspection on September 1, 2015.  Plaintiffs' counsel also wrote a further email on August 27, 2015 indicating that after the visual site inspection on September 1, 2015, he was "planning a follow up to take samples."  *Id.*, Exh D. at 12-13.

On September 1, 2015, a site inspection was conducted at Magnolia Elementary, which was attended by Plaintiffs' counsel - John Fiske; Plaintiffs' expert - Anthony Brown; Ametek's counsel - Edward Walton; and Ametek's expert - Truong Mai, as well as representatives of the Cajon Valley School District and environmental consultants for the project.  ECF No 40-2 at ¶ 3; ECF No. 40-1 at ¶ 15; ECF No. 42-2 at ¶2; ECF No. 42-1 at ¶ 6.

Ametek's expert, Truong Mai, told those assembled at the September 1, 2015 site inspection "that the SSD and AES units would be turned on immediately after completion of construction in mid-September."  Mai Decl. , ECF No. 40-1 at ¶ 15.

On September 10, 2015, Plaintiffs' counsel sent an email to the Cajon Valley Union School District's counsel requesting "to meet and confer as soon as possible and before any remediation occurs to discuss next steps." ECF 31-4, Exh. E at 19.  Ametek's counsel was copied on this email. *Id.*

On September 11, 2015, Ametek's counsel notified Plaintiff's counsel via email that Ametek's lead counsel, attorney Ed Walton, was out of the country and unavailable to meet and confer until approximately September 15, 2015.  *Id.*, Exh. F at 20-21.

Also, on September 11, 2015, Senior Operation's counsel replied to Plaintiff's counsel as well as counsel for Ametek and the Cajon Valley Union School District that he

preferred to have a conference when Mr. Walton returned to town.  *Id.*, Exh. G at 23.

Counsel for the Cajon Valley Union School District also replied to Plaintiff's counsel, counsel for Ametek and Senior Operations' counsel on September 11, 2015, stating that: "The District wants to cooperate with these efforts, but does not want this process to delay installation of engineering controls." *Id.*, Exh. H at 25.

On September 14, 2015, Ametek's counsel advised that Mr. Walton would be "not be back in the office and available for a conference call until Wednesday [September 16, 2015]." *Id.*, Exh. H at 25.

The SSD and AES units were activated on the afternoon of September 16, 2015. Mai Decl. , ECF No. 40-1 at ¶ 16.

On September 22, 2015, Plaintiffs' counsel sent an email to Ametek's counsel, Senior Operation's counsel and counsel for the Cajon Valley Union School District announcing, "we and our experts would like to be present when the sub slab depressurization is 'turned on'.  Prior to the system's commencement, we would like to install sample ports on the exhaust." ECF No. 31-4, Exh. I at 28.

On September 24, 2015, Plaintiffs' counsel learned that the SSD and AES units had been activated.  ECF No. 31-1 at 6:17-19; ECF No. 40-3 at Exh. E.

## III.  Parties' Arguments

### A.  Plaintiffs Request An Adverse Inference Jury Instruction Due To Ametek's Spoliation of Vapor Emissions Data And A Preservation Order To Prevent Further Loss Of Evidence.

Plaintiffs argue sanctions are warranted because initial emission readings from the six SSD and AES systems, which were never collected, will never be known.  Plaintiffs contend initial emissions data would have been the best evidence of actual vapor conditions underneath Magnolia Elementary prior to depressurization.  Plaintiffs underscore the fact that they were never notified of the actual date the SSD system would be turned on despite having sent, approximately six days before the SSD and AES systems were activated, an email to the Cajon Valley Union School District's counsel and

Ametek's counsel requesting "to meet and confer as soon as possible and before any remediation occurs to discuss next steps."  ECF No. 31-4, Exh. E at 19; ECF No. 42 at 2.

Plaintiffs argue Ametek should be sanctioned because it requested a delay in meeting and conferring about inspection and testing, which Plaintiffs' counsel respected, and then turned on the depressurization systems, blatantly ignoring the previous preservation emails without meeting or conferring, or even sending a notification that the systems would be activated on September 16, 2015.  *Id.* at 4:1-10.  Plaintiffs argue the timing of the systems' activation suggests bad faith because it falls coincidentally on the same day that Ametek's counsel would finally be available to meet-and-confer.

Plaintiffs contend they are prejudiced because they intended to use initial emissions data at trial to "help tell the story of what the conditions have been like for students and teachers over the past decades prior to any remediation efforts" and because such evidence can never be recovered or recreated.  [ECF No. 31-1 at 4:6-8 and 10:25-27; ECF No. 42 at 6:11-12.]

Plaintiffs' expert, Anthony Brown, who is the chief executive officer and principal hydrologist at consulting firm, Aquilogic, has opined in his declaration that: "SSD systems, if operating as intended, change and impact the vapor conditions beneath the foundation of the classrooms.  The SSD systems change the conditions that existed immediately before the SSD system was turned on, and the SSD systems also continuously change the conditions as they continue to operate."  ECF No. 31-3 at ¶ 9.  "One cannot go back in time to collect samples of vapor which existed immediately before the SSD systems were turned on."  *Id.* at  ¶10.  "Since ERM[6] did not collect any vapor samples, there are no samples from the initial emissions."  *Id.* at  ¶11.  "This evidence is important because the vapor samples would have provided information about the sub slab vapor conditions that were impacting the classrooms prior to the operation of the SSD."  *Id.* at  ¶13.

---

[6]"ERM" is an abbreviation for Environmental Resources Management, the environmental consulting firm that is conducting the Pilot Tests at Magnolia Elementary.  Mai Decl. at ¶¶2-8.

**B.  Defendant Ametek Argues Spoliation Is An Impossibility Given That Initial Emissions Data, To The Extent It Is Relevant, Can Be Regenerated**

Ametek argues Plaintiffs did not put it on notice at the September 1, 2015, inspection of Magnolia Elementary that they wished to record initial emissions data or install sample ports before the SSD and AES units were activated.  Ametek contends Plaintiffs and their experts were aware that installation of the systems, which were approved by the California Department of Toxic Substance Control and the Cajon Valley School District, would be started sometime in mid-September 2015. [ECF No. 40 at 6:11-17.]  Ametek suggests it is Plaintiffs who are operating in bad faith by allowing their experts to remain silent about collection of initial emissions data until after they knew the systems had been activated in order to manufacture a spoliation issue.

Ametek asserts that even if data was not captured by the failure to record initial vapor emissions, such data is not relevant because "the air at issue for inhalation in this case is in the classrooms, not in an exhaust pipe to the outdoors for air trapped under buildings."  *Id*. at 6:22-27.  Moreover, putting relevance questions aside, Ametek also contends Plaintiffs' accusation of prejudicial spoliation is overstated because "there has been a large variety and mount of soil vapor, indoor and outdoor air, and ground water samples collected over the last approximately 20 years that have provided a baseline condition beneath [Magnolia Elementary School] prior to the commencement of the Pilot Tests....which are part of the public record." [ECF No. 40-1, Mai Decl. at ¶21.]  Ametek also argues there is no prejudice to Plaintiffs because the initial emissions data can be recaptured.  *Id.* at 6:27-7:2.

Ametek's expert, Truong Mai, who is a civil engineer and partner with Environmental Resources Management has opined in his declaration that: "Although vapor samples were not collected prior to start-up of the SSD and AES units, nearly identical conditions can be recreated to facilitate such sample collection if desired.  The soil vapor conditions beneath the rooms where SSD and AES units are installed can be replicated easily... The SSD and AES units are not designed to, nor are they capable of,

remediating or materially changing the VOC concentrations in the groundwater plume or the soil beneath the classrooms itself.  If the SSD and AES units stop operation for a few days, the relatively modest air flow that they induce in the subsurface would cease, thus restoring soil vapor conditions to those similar to prior initiation of the pilot test.  At which time, Plaintiff's expert can collect the desired vapor samples during re-startup of the Pilot Test systems." Mai Decl. , ECF No. 40-1 at ¶ 24.

**IV.  Standard of Review**

Spoliation is the "destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604, 626 (C.D. Cal. 2013) (quoting *Zubalake v. UBS Warburg LLC*, 220 F.R.D. 212, 226 (S.D.N.Y. 2003) ("*Zubalake IV*").  District courts can sanction a party who has despoiled evidence under its inherent power "to levy sanctions in response to abusive litigation practices." *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  Depending on the case, appropriate sanctions may include dismissing claims, drawing adverse inferences about the content of evidence destroyed, excluding testimony and evidence, or awarding fees and costs. *Id.; Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir.1993); *In re Napster, Inc. Copyright Litigation*, 462 F.Supp.2d 1060, 1070-78 (N.D. Cal.2006).  It is the burden of the moving party to show sanctionable conduct and prejudice. *Reinsdorf*, 296 F.R.D. at 626.

**V.  Discussion**

The Court's inherent power to impose evidentiary sanctions is discretionary. *Glover v. BIC Corp.*, 6 F.3d 1318, 1328 (9th Cir. 1992) (explaining "[a] federal court has the inherent discretionary power to make appropriate evidentiary rulings in response to the destruction or spoliation of relevant evidence.")  Consequently, the simple alteration or even destruction of evidence "does not necessarily mean that the party has engaged in sanction-worthy spoliation.*" See Reinsdorf* , 296 F.R.D. at 626 (quoting *Ashton v. Knight Transp., Inc*., 772 F.Supp.2d 772, 799-800 (N.D. Tex.2011).

## A.     Are Evidentiary Sanctions Appropriate?

As noted above in the Standard of Review section *supra*, a party moving for evidentiary sanctions, including an adverse inference jury instruction, has the burden of demonstrating: "(1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the records were destroyed with a 'culpable state of mind'; and (3) that the evidence was 'relevant' to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Reinsdorf*, 296 F.R.D. at 626 (quoting *Zubulake IV*, 220 F.R.D. at 220);  *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 881 F. Supp. 2d 1132, 1138 (N.D. Cal. 2012) ("*Apple I*").

### 1.)  There was an obligation to preserve evidence of Magnolia Elementary's property conditions.

The spoliation analysis begins with the point at which Ametek became obligated to preserve evidence relevant to Plaintiff's toxic tort action. *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 991 (N.D. Cal. 2012) ("Apple II") (explaining trial courts in the Ninth Circuit generally agree that as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.)  Plaintiffs' counsel sent preservation emails: (1) on June 25, 2015, requesting "all evidence of Magnolia's current property conditions be maintained" until a meet-and-confer regarding testing and inspection could be completed; (2) on August 27, 2015 indicating that after the visual site inspection on September 1, 2015, Plaintiffs were "planning a follow up to take samples"; and (3) on September 10, 2015, requesting "to meet and confer as soon as possible and before any remediation occurs to discuss next steps." [ECF No. 31-4, Exh. A at 2; Exh D. at 12-13; and Exh. E at 19.]

It is clear Ametek's duty to preserve evidence was triggered several months before the alleged spoliation with the filing of Plaintiffs' state court complaint on May 29, 2015. [ECF No. 1-3.]  Moreover, Ametek was aware from Plaintiffs' counsel's various emails

in June, August and September of 2015 that Plaintiffs were generally interested in testing, inspecting and sampling property conditions at Magnolia Elementary at some point.

### 2.)  A Negligent State of Mind is Sufficient to Impose Sanctions.

In the Ninth Circuit, "a party's destruction of evidence need not be in 'bad faith' to warrant a court's imposition of sanctions."  *See Reinsdorf*, 296 F.R.D. at 627 (quoting *In re Napster, Inc. Copyright Litigation*, 462 F. Supp.2d 1060, 1066 (N.D. Cal. 2006)). Within the range of culpable mindsets, even "negligent destruction of evidence may, in the proper circumstances, warrant some form of sanction."  *Reinsdorf*, 296 F.R.D. at 627-28 (explaining the negligent destruction of evidence may be sanctioned because a party should bear the risk of its own negligence.)

Ametek's argument that it did not know, because it was not informed at the September 1, 2015 inspection, that Plaintiffs would want to install sample ports or take initial emissions readings, does nothing to change the court's analysis of this factor because negligence is a sufficiently culpable state of mind in the context of spoliation sanctions.  It was careless for Ametek to go forward with pilot testing because it received Plaintiffs' preservation letters asking for the maintenance of current property conditions at Magnolia Elementary and it received Plaintiffs' emails asking for a meet-and-confer *before* any remediation occurred.  Ametek was also aware that the SSD and AES systems would change the current conditions at the property, even if only temporarily; therefore Ametek's negligent mindset suffices for the purpose of imposing a sanction.

### 3.)  Evidence at issue was relevant to Plaintiff's toxic tort claim for vapor intrusion[7].

Spoliation requires an awareness that the evidence destroyed was potentially relevant to the litigation before it was destroyed.  *U.S. v. Kitsap Physicians Service*, 314 F.3d 995, 1001 (9th Cir. 2002).  Ametek argues it did not consider vapor samples of the air under the classrooms relevant because the air that students and teachers inhale is

---

[7]Plaintiffs allege claims of negligence, gross negligence and public nuisance, which survived Defendant's motion to dismiss. *See* FAC at ECF No. 21; and Order Granting In Part/Denying in Part Ametek's Motion to Dismiss at ECF No. 43.

found inside the classroom and not outdoors.  While indoor classroom air may ultimately be the focus of Plaintiffs' toxic tort claim, it is clear vapors migrating upward and out from the soil underneath Magnolia Elementary are a factor in the final air quality equation inside the classroom.  *See* Plaintiffs' Expert Declaration at ECF No. 31-3, Brown Decl., ¶13 (stating: "This evidence is important because the vapor samples would have provided information about the sub slab vapor conditions that were impacting the classrooms prior to the operation of the SSD."); ECF No. 21 at ¶¶ 49-51*; see also* Ametek's Expert Declaration at ECF No. 40-1, Mai Decl., ¶12 (stating "[t]he recommended standard of practice for assessing the potential impact to human health is the collection of air samples, outdoor and indoor." ) and Mai Decl., ¶20 (admitting that while chemical samples are not being collected from outdoor exhaust sample ports located on the SSD and AES units, "chemical samples are instead being collected generally from the outdoor air (to establish an ambient baseline)..."

The Court also rejects Ametek's argument that initial emissions evidence is irrelevant given the Ninth Circuit's recognition that the relevance of destroyed or unavailable evidence "cannot be clearly ascertained because the [evidence] no longer exist[s]"; therefore, a party "can hardly assert any presumption of irrelevance" as to the destroyed evidence.  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (quoting *Alexander v. Nat'l Farmers Org.*, 687 F.2d 1173, 1205 (8th Cir. 1982).  This reasoning applies here, where initial vapor emissions samples were never recorded, so the Court cannot make an informed evaluation as to what those samples would, or would not, have shown.  Accordingly, the Court finds that vapor samples of initial emissions results have relevance.

### B.  Which Sanction Should Be Imposed?

Out of the various sanctions available to address an incident of  spoliation, an adverse inference instruction has been recognized by the district courts as a "severe sanction." *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d 976, 994 (N.D. Cal. 2012) ("Apple II"); *Olney v. Job.com*, 2014 WL 5430350, *16 (E.D. Cal. 2014)

(finding an adverse inference appropriate where Plaintiff's degree of culpability was high and defendant's degree of prejudice as a result, was high); *Moore v. Gilead Sciences, Inc.* 2012 WL 669531, *5 (N.D. Cal. 2012) (stating "an adverse inference instruction is 'an extreme sanction and should not be taken lightly.'");  *In re Hitachi Television Optical Black Cases*, 2011 WL 3563781, *11 (S.D. 2011) (recognizing adverse inference instruction is a "harsh remedy").

In order to decide which degree of sanction is appropriate to impose, courts generally consider: "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party." *Apple II,* 888 F. Supp. 2d. at 992.

Additionally, "when the spoliating party was merely negligent [as the Court has found to be the case here], the innocent party must prove both relevance and prejudice in order to justify the imposition of a severe sanction."  *See Reinsdorf*, 296 F.R.D. at 627 (quoting *Pension Comm. Of the Univ. Of Montreal Pension Plan v. Banc of America Securities, LLC*, 685 F.Supp. 2d 456, 467 (S.D.N.Y. 2010).  Having already found relevance, the Court will consider the additional factors of fault, prejudice (which is required for an adverse inference instruction) and the availability of lesser sanctions in turn below.

### 1.) Degree of fault of the party who altered or destroyed the evidence.

Ametek is not the only entity responsible for the scheduling of the SSD and AES pilot tests.  The pilot tests were undertaken in conjunction with the California Department of Toxic Substance Control and the Cajon Valley Union School District, both of which are not parties to this lawsuit.  It is important to note that counsel for the Cajon Valley Union School District *also* received Plaintiffs' counsel's September 10, 2015, email requesting "to meet and confer as soon as possible and before any remediation occurs to discuss next steps." ECF 31-4, Exh. E at 19.  In response to this email, counsel for the Cajon Valley Union School District replied to Plaintiff's counsel, Ametek's counsel and

Senior Operations' counsel on September 11, 2015, stating: "The District wants to cooperate with these efforts, but does not want this process to delay installation of engineering controls." *Id.*, Exh. H at 25. The Court was not provided with any emails that responded to the concerns of the School District's counsel about avoiding delay. Nevertheless, it is evident that additional forces, not just Ametek, were factors in scheduling the pilot test activation.

Given the fact that: (1) non-parties also had input into the pilot test startup schedule; and (2) Ametek proceeded with the pilot testing not in bad faith, but negligently in light of its receipt of the generalized preservation letters and nonspecific requests to meet and confer, the Court finds the degree of culpability on Ametek's part is low. This militates against the imposition of an adverse inference instruction.

### 2.) Degree of prejudice suffered by the opposing party.

Plaintiffs' expert, Anthony Brown, opines in his declaration that "one cannot go back in time to collect samples of vapor which existed immediately before the SSD systems were turned on" and "one cannot go back in time to collect samples of vapor which existed in the moments immediately after the system began." [ECF No. 31-3 at ¶10. While this is true, the Ninth Circuit has nevertheless recognized that the availability of other evidence can mitigate prejudice caused by a loss of primary evidence. *Med. Lab Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 825 (9th Cir. 2002) (explaining that when original evidence has been lost, proof by secondary evidence is permissible). Plaintiffs do not dispute that Magnolia Elementary has been assessed for impact to soil and groundwater since 1994 resulting in "numerous soil vapor, groundwater , and air samples (outdoor and indoor) over the last 20 years. ECF No. 40-1, Mai Decl., at ¶7-8. Ametek's expert has opined, and Plaintiffs did not object, that "there have been a large number of soil vapor samples collected from Magnolia Elementary School" and "there has been a large amount of outdoor and indoor air samples collected from Magnolia Elementary School." *Id.*, at ¶11-12. And in fact, Plaintiffs' First Amended Complaint cites authoritatively to recent vapor intrusion indoor air quality test results and ambient

1   air sampling done at Magnolia Elementary by the California Department of Toxic

2   Substance Control from August, November, and December of 2014 as well as from

3   March 2015.  ECF No. 21 at ¶¶46-55.

4   There appears to be a generous amount of material available to Plaintiffs to provide

5   information about the sub slab vapor conditions affecting the Magnolia Elementary

6   classrooms prior to the start of the pilot testing.

7          In addition to the existence of other historic outdoor and indoor air sample

8   evidence, more current evidence may still be acquired.  Ametek's expert has explained:

9   "although vapor samples were not collected prior to start-up of the SSD and AES units,

10   nearly identical conditions can be recreated to facilitate such sample collection if

11   desired."  Specifically, Ametek's expert has opined:

12         "If the presence of volatile organic compounds (VOCs) in indoor air at Magnolia
          Elementary School (MES) is from vapor intrusion, the same VOCs would need to
13         migrate from soil vapor beneath MES, which would need to volatize from the same
          VOCs in the groundwater plume originating from the Greenfield Facility.  The
14         VOC concentrations in the groundwater plume are very stable and do not changed
          materially quickly, as demonstrated by over 28 years of monitoring.  The SSD and
15         AES units are not designed to, nor are they capable of, remediating or materially
          changing the VOC concentrations in the groundwater plume or the soil beneath the
16         classrooms itself.  If the SSD and AES units stop operation for a few days, the
          relatively modest air flow that they induce in the subsurface would cease, thus
17         restoring soil vapor conditions to those similar to prior initiation of the pilot test.
          At which time, Plaintiff's experts can collect the desired vapor samples during re-
18         startup of the Pilot Tests systems."
19

20

21

22   ECF No. 40-1, Mai Decl., at ¶24.

23         The Court finds prejudice in this case is slight because vapor intrusion testing and

24   sampling has previously occurred and been documented by the California Department of

25   Toxic Substance Control *before* the SSD and AES units were activated at Magnolia

26   Elementary in September of 2015.  The prejudice to Plaintiffs in this case is also minimal

27   because the sampling of sub slab conditions that Plaintiffs seek to do can still be done

28   upon cessation and re-initiation of the pilot testing systems.  Thus, this factor weighs

against imposing an adverse inference instruction.

**3.)  Lesser sanctions to avoid substantial unfairness to opposing party.**

There are lesser sanctions available to the Court under its inherent power other than the severe adverse inference instruction requested by Plaintiffs, including the discretion to award fees and/or costs.  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).  In this case, there is a low degree of culpability and an even lower degree of prejudice given that pre-pilot test indoor and outdoor air sample results are available in the public record and vapor sampling can still be taken at Magnolia Elementary.  This Court is also mindful of the principles behind the court's inherent powers, which require such sanctioning power to be "applied with restraint and discretion and only to the degree necessary to redress the abuse." *See Reinsdorf*, 296 F.R.D. at 62c7 (*quoting Chambers v. Nasco, Inc*., 501 U.S. 32, 45, 111 S. Ct. 2123, 115 L.Ed.2d 27 (1991).  Accordingly, Plaintiff's request for the severe sanction of an adverse inference jury instruction is **DENIED.**

In order to place Plaintiffs in substantially the same position as they would have been absent the failure of Ametek to sample initial vapor emissions before the activation of the SSD and AES systems, the Court finds Ametek must cease operation of the pilot test SSD and AES units in order to restore soil vapor conditions at Magnolia Elementary to those similar to condition before pilot testing was initiated.  Plaintiff's experts shall also be permitted to collect vapor samples at the re-startup of the SSD and AES systems.

Finally, to prevent any further negligent or inadvertent spoliation at the property the Court also requires Ametek to provide Plaintiffs with 30-days notice before conducting further remediation efforts at Magnolia Elementary.

///

///

///

///

## VI.  Conclusion

As detailed above, Plaintiffs' motion for sanctions and preservation is **GRANTED IN PART and DENIED IN PART**.  It is hereby **ORDERED** that:

1.  Plaintiffs' counsel, counsel for Ametek and all other participants responsible for oversight of the SSD and AES pilot testing shall meet and confer in person **no later than March 21, 2016,** to schedule the temporary cessation of the SSD and AES units in order to restore soil vapor conditions at Magnolia Elementary to those similar to its condition before pilot testing was initiated;

2.  Plaintiffs' experts shall be permitted to collect vapor samples at the re-startup of the SSD and AES systems;

3.  Ametek shall pay the reasonable attorney fees and costs associated with bringing the instant spoliation motion. The amount of this sanction shall be determined by the Court subject to the Court's receipt of a supplemental attorney's fees/costs declaration from Gomez Trial Attorneys;

4.  **No later than March 28, 2016**, Plaintiffs' counsel shall file a declaration as to the attorney's fees and costs associated with the instant spoliation motion;

5.  Counsel for Defendant Ametek may file a response to the attorney's fees and costs listed in Plaintiffs' counsel's declaration **no later than April 4, 2016.**  The Court will take the matter under submission under Civil Local Rule 7.1(d);  and

6.  Ametek is required to provide Plaintiffs' counsel with 30-days notice before conducting further remediation efforts at Magnolia Elementary School during the pendency of this case.

DATED:  March 4, 2016

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court

15cv1394 GPC (BGS)