# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE TRUJILLO, as Guardian Ad Litem for KADEN PORTER, a minor, on behalf of himself and others similarly situated; LACEY MORALES, as Guardian Ad Litem for ISABEL MORALES., a minor, on behalf of herself and others similarly situated; BEVERLY HOY, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br>v.<br><br>AMETEK, INC., a Delaware corporation; SENIOR AEROSPACE KETEMA, a business entity form unknown; and DOES 1 through 100, inclusive,<br><br>                    Defendant. | CASE NO. 3:15-cv-1394-GPC-BGS<br><br>**ORDER GRANTING IN PART DEFENDANTS' MOTIONS FOR ENTRY OF *LONE PINE* CASE MANAGEMENT ORDER**<br><br>[ECF Nos. 59, 60] |

Before the Court are Defendants' motions for entry of a *Lone Pine* case management order ("CMO"). Motion for Entry of *Lone Pine* Case Management Order by Senior Operations, LLC ("Sen. Mot."), ECF No. 59; Motion for Entry of a *Lone Pine* Modified Case Management Order by Ametek, Inc., ("Am. Mot."), ECF No. 60. The motions have been fully briefed. *See* Pl. Opp., ECF No. 67; Sen. Reply, ECF No. 69; Am. Reply, ECF No. 70.

Upon review of the parties' submissions and the applicable law, the Court

**GRANTS IN PART** Defendants' motions.

## FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of the dumping of toxic waste by Defendants and their predecessors into a temporary waste storage tank (or "sump") on their property ("Ametek property"). Am. Compl. ("Compl.") 4, ECF No. 21. Plaintiffs, students and teachers at neighboring Magnolia Elementary School ("Magnolia"), allege that from 1963 to 1985, owners of the Ametek property used a sump to temporarily store toxic waste which consisted of a 12 feet in diameter and 10 feet deep hole in the ground, resulting in a massive waste plume that has extended beneath Magnolia. Plaintiffs allege that the plume includes large amounts of TCE, 1,1-dichloroetyhlene ("DCE"), dioxane, and TCA, as well as smaller amounts of PCE, 1, 1-dichloroethane ("DCA"), benzene, toluene, ethylbenzene, and xylene. *Id.* Plaintiffs allege that the various chemicals found in the waste plume have been found by federal agencies, including the Agency for Toxic Substances and Disease Registry ("ATSDR") and the Environmental Protection Agency ("EPA"), to have toxic health effects. *Id.* at 20. Plaintiffs allege that this toxic exposure has significantly increased Plaintiffs' chances of developing "cancer, or liver, kidney, respiratory, neurological, developmental, and other diseases and illnesses." *Id.* at 25.

On May 29, 2015, Plaintiffs filed a class action complaint on behalf of themselves and all others similarly situated against Defendants in the Superior Court of the State of California in the County of San Diego. Notice of Removal 1, ECF No. 1. On June 25, 2015, Defendants removed the case to federal court on the basis of diversity jurisdiction. *Id.* at 3. On August 7, 2015, Plaintiffs filed an amended complaint, bringing four causes of action for (1) negligence; (2) gross negligence; (3) public nuisance; and (4) strict liability (ultrahazardous activity). Compl. 25–28. Plaintiffs sought punitive as well as compensatory damages as to each cause of action, as well as medical monitoring costs. *Id.* at 32; *see also id.* at 24–28.

On November 18, 2015, the Court granted in part and denied in part Defendants'

motions to dismiss. ECF No. 43. The Court granted Defendants' motions to dismiss as to Plaintiffs' strict liability (ultrahazardous activity) claim, but denied it as to Plaintiffs' negligence, gross negligence, and public nuisance claims. *Id.* at 26.

Defendants' motions followed.

## LEGAL STANDARD

"A *Lone Pine* order is designed to assist in the management of complex issues and potential burdens on defendants and the court in mass tort litigation, essentially requiring plaintiffs to produce a measure of evidence to support their claims at the outset." *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 255–58 (S.D. W. Va. 2010) (citing *Steering Committee v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n. 2 (5th Cir. 2006); *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000) ("Lone Pine orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation."); *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009)("The basic purpose . . . is to identify and cull potentially meritless claims and streamline litigation in complex cases."); *Abrams v. Ciba Specialty Chem. Corp.*, 2008 WL 4710724, at *2 (S.D. Ala. 2008); *Ramos v. Playtex Prod., Inc.*, 2008 WL 4066250, at *5 (N.D. Ill. Aug. 27, 2008); *Abbatiello v. Monsanto Co.*, 569 F. Supp. 2d 351, 353 n. 3 (S.D.N.Y. 2008); *In re Vioxx Prod. Liab. Litig.*, 557 F. Supp. 2d 741, 743 (E.D. La. 2008); *Burns v. Universal Crop Prot. Alliance*, 2007 WL 2811533, at *1 (E.D. Ark. 2007); *Morgan v. Ford Motor Co.*, 2007 WL 1456154, at *1, 7 (D.N.J. May 17, 2007)). *Lone Pine* orders are so called after *Lore v. Lone Pine Corporation*, 1986 WL 637507 (N.J. Super. Ct. Law Div. Nov. 18, 1986), the case in which a court first issued this type of order. Although the content and scope of such orders varies from case to case, in general, *Lone Pine* orders require plaintiffs to make a *prima facie* showing of injury and causation by providing facts of an individual plaintiff's exposure to alleged toxic substances, combined with expert medical testimony supporting the claims of injury and causation by the alleged toxic substances. *See, e.g.*, David B. Weinstein, Christopher Torres, *An Art of War Lesson Applied to Mass Torts: The Lone*

*Pine Strategy*, 14 NO. 1 ABA Envtl. Enforcement & Crimes Committee Newsl. 14 (2013); 6A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1525 (3d ed. 2016).

The use of *Lone Pine* orders, sometimes called *Cottle* orders in California after *Cottle v. Superior Court*, 3 Cal. App. 4th 1367 (1992), has been approved by the Ninth Circuit. In *Avila v. Willits Environmental Remediation Trust*, 633 F.3d 828 (9th Cir. 2011), the Ninth Circuit observed that the use of *Lone Pine* orders is authorized by a district court's "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Id.* at 833.

> In particular, Rule 16(c)(2)(L) authorizes a court to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems." No basis appears for us to cordon off one type of order—a prima facie order on exposure and causation in toxic tort litigation—from the universe of case management orders that a district court has discretion to impose. . . . Neither does the *prima facie* process skirt accepted procedure. In a case such as this, *Daubert* obliges a district judge to determine at the outset, pursuant to Federal Rule of Evidence 104(a), whether an expert's testimony will assist the trier of fact by assessing whether the methodology underlying the testimony is valid and reliable. 509 U.S. at 592–93, 113 S.Ct. 2786. "A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability." *Elsayed Mukhtar v. Cal. State Univ., Hayward*, 299 F.3d 1053, 1063 (9th Cir.2002). Thus, a case management order that focuses on key issues for expert opinion is in aid of the *Daubert* responsibilities the district judge must discharge.

*Id.* at 833–34.

Courts have identified a number of facts pertaining to the propriety of entering a *Lone Pine* order, including: "(1) the posture of the action, (2) the peculiar case management needs presented, (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute, and (5) the type of injury alleged by plaintiffs and its cause." *See In re Digitek Prod. Liab. Litig.*, 264 F.R.D. at 256 (citations omitted). Courts have differed on whether the use of *Lone Pine* orders should be considered "routine," *see In re Vioxx*, 557 F. Supp. 2d at 743, or "exceptional," *see McManaway*, 265 F.R.D. at 389. However, courts agree that "[i]n crafting a Lone Pine order, a court should strive to

strike a balance between efficiency and equity." *See McManaway*, 265 F.R.D. at 385 (quoting *In re Vioxx*, 557 F. Supp. 2d at 744).

## DISCUSSION

Defendants seek a *Lone Pine* CMO requiring each plaintiff to make a *prima facie* showing of exposure, increased risk of specific injury, and causation, before discovery is opened in the case. Am. Mot. 2. Plaintiffs oppose, arguing that imposing a *Lone Pine* order before discovery has commenced would be premature and prejudicial to Plaintiffs. Pl. Opp. 6.

To the extent that Defendants are asking Plaintiffs to make a *prima facie* showing as to putative class members, the Court agrees with Plaintiffs that such a request would be premature. In *Abuan v. General Electric Company*, 3 F.3d 329 (9th Cir. 1993), the Ninth Circuit approved of a district court's actions in issuing a *Lone Pine* order following class certification in a medical monitoring toxic tort case, and subsequently dismissing several claimants who failed to comply with the court's order. *Id.* at 331. Here, a class has not yet been certified, so it would place an exceptional burden on Plaintiffs' counsel and raise due process concerns to require putative class members to make a *prima facie* showing. However, the Court does not find it unwarranted to require the named Plaintiffs to make such a showing.

First, as to the posture of the action, and the type of injury alleged by Plaintiffs and its cause, while it is true that in many *Lone Pine* cases, discovery had been going on for a number of years before the court imposed a *Lone Pine* order, a number of courts have observed that *Lone Pine* orders do not place too high a burden on plaintiffs relative to the stage of the litigation where they "essentially require[] that information which plaintiffs should have had before filing their claims pursuant Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.2d at 339; *see also Lone Pine*, 1986 WL 637507, at *4. As the *Acuna* court explained, at the outset of litigation, "[e]ach plaintiff should have had at least some information regarding the nature of his injuries, the circumstances under which he could have been exposed to harmful substances, and the basis for believing

1  that the named defendants were responsible for his injuries." 200 F.2d at 339. Similarly, here, the Court does not find it unreasonable that before filing their claims, the named Plaintiffs should have had at least some information regarding the circumstances under which they could have been exposed to harmful substances, and the medical basis for believing that the named defendants were responsible for significantly increasing Plaintiffs' risks of contracting various diseases.

Second, as to the peculiar case management needs presented, and the availability and use of other procedures explicitly sanctioned by federal rule or statute, this is a toxic tort medical monitoring case in which Plaintiffs make no claims of present injury, and propose an extremely broad class of "[a]ll students and teachers who attended or worked at Magnolia Elementary School, between 1963 to the present." Compl. 29. Thus, the Court is presented with the prospect of a complex case with expansive discovery proceedings and additional procedural requirements, including class certification, such that taking actions to further a "just, speedy, and efficient disposition" of the issues is especially desirable. *In re Digitek*, 264 F.R.D. at 258.

Third, as to external agency decisions impacting the merits of the case, Defendants point to evidence from the California Department of Toxic Substances Control ("DTSC") showing that the level of toxic vapors at Magnolia do not pose a danger to students and teachers, as well as a declaration from the Superintendent of the Cajon Valley Union School District ("CVUSD") stating that: (a) the decision to temporarily close Magnolia for the 2015-16 school year was not because conditions at Magnolia were unsafe, but simply to prevent disruption to the learning environment while Defendants undertook further monitoring and/or mitigation efforts; and (b) CVUSD plans to reopen Magnolia for the 2016-17 school year. *See* Am. Reply Exs.; Miyashiro Decl. 3–4, ECF No. 70-1. This evidence has been undisputed by Plaintiffs. Where external agency decisions suggest that plaintiffs' claims as to injury and causation are suspect, courts have found *Lone Pine* orders to be appropriate. *See McManaway*, 265 F.R.D. at 385 ("Hence, [s]ome courts have entered [Lone Pine]

orders only after a state or federal agency has issued a report that either provides much of the information called for in the order or undercuts the plaintiffs' claims for personal injuries." (internal quotation marks omitted)).

Thus, the Court finds it appropriate that before proceeding to class certification, each named Plaintiff be required to make a *prima facie* showing as to exposure, increased risk of specific injury, and causation. That said, the Court will not stay discovery proceedings in their entirety in the meantime. Discovery is ongoing in the related case *Greenfield MHP Associates, L.P. v. Ametek, Inc.*, No. 3:15-cv-01525-GPC-BGS. The Court has reviewed the joint discovery plans submitted here and in *Greenfield*, and finds that they are largely co-extensive, with the exception of Plaintiffs' discovery requests (l)–(o) in the instant case. *See* ECF No. 58. Moreover, parties are represented by the same counsel in both cases. Thus, to the extent that Plaintiffs' discovery requests in the instant case are co-extensive with those in *Greenfield*, and to the extent consistent with Magistrate Judge Skomal's management of the scope of discovery proceedings prior to class certification, the Court will permit discovery to go forward at the present time.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' motions for entry of a *Lone Pine* CMO, ECF Nos. 59, 60, are **GRANTED IN PART**.

The Court hereby enters Case Management Order No. 1 as follows:

Each Plaintiff shall produce a case-specific expert report within ninety (90) days of the issuance of this Order including the following information:

(1) The identity of any hazardous substance(s) originating from the Ametek Property to which the Plaintiff was exposed;

(2) The level of exposure to substance(s) from the Ametek Property claimed by Plaintiff, and whether such level of exposure presents a human health risk;

(3) The route of exposure;

(4) The relative increase in the chance of onset of a specific disease(s) in the Plaintiff as a result of the exposure, when compared to (a) the Plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease;

(5) The clinical value of early detection and diagnosis with respect to each particular disease(s) that the Plaintiff seeks to screen through medical monitoring;

(6) The scientific and medical bases for the expert's opinions and conclusions, including specific reference to the particular scientific and medical literature forming the basis of the expert's opinion.

Any Plaintiff who fails to provide the case-specific expert report that complies with this Order within ninety (90) days of the issuance of this Order will be subject to having his or her claims dismissed with prejudice upon application to the Court by Defendants.

**IT IS SO ORDERED.**

DATED: June 28, 2016

HON. GONZALO P. CURIEL
United States District Judge