# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE TRUJILLO, as Guardian Ad Litem for KADEN PORTER, a minor, on behalf of himself and others similarly situated; LACEY MORALES, as Guardian Ad Litem for ISABEL MORALES., a minor, on behalf of herself and others similarly situated; BEVERLY HOY, on behalf of herself and all others similarly situated; <br><br> Plaintiffs, <br> v. <br><br> AMETEK, INC., a Delaware corporation; SENIOR OPERATIONS, LLC, a limited liability company; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO.: 3:15-cv-01394-GPC-BGS <br><br> **ORDER DENYING DEFENDANTS' OBJECTIONS TO PLAINTIFFS'** *LONE PINE* **SUBMISSION** <br><br> **[Dkt. Nos. 84 & 85]** |

Before the Court is Plaintiffs' *Lone Pine* submission, Dkt. No. 77, filed pursuant to this Court's Order Granting in Part and Denying in Part Defendants' Motion for Entry of a *Lone Pine* Case Management Order, Dkt. No. 71. On December 2, 2016, this Court granted Defendants' request to file objections to Plaintiffs' *Lone Pine* response. Dkt. No. 83. The adequacy of Plaintiffs' *Lone Pine* submission has been fully briefed. Defendant Ametek, Inc. ("Ametek") and Defendant Senior Operations, LLC ("Senior Operations") each filed separate objections on January 3, 2017. Plaintiffs Trujillo, Morales and Hoy filed a joint response to the Defendants' objections on January 23, 2016, Dkt. No. 86, and Defendants submitted separate replies on January 30, 2017, Dkt. Nos. 87 & 88.

Upon review of the evidence submitted by Plaintiffs, the moving papers, the applicable law, and for the foregoing reasons, the Court hereby **DENIES** Defendants' objections to Plaintiffs' *Lone Pine* submission and concludes that Plaintiffs have made a sufficient *prima facie* evidentiary showing to warrant moving ahead with discovery.

## **BACKGROUND**

This is toxic tort case arising out of Defendant Ametek's alleged dumping of chemical waste into a temporary storage tank on their property in El Cajon, California.[1] Plaintiffs allege that the toxic waste caused an underground plume of discharge that infected, and continues to infect, the groundwater below the Magnolia Elementary School ("Magnolia"), which shares a property line with the Defendant property. Plaintiffs further allege that the plume created toxic fumes that migrated, and continue to migrate, from the ground into the air at Magnolia. According to Plaintiffs, the toxic vapors contain chemicals that posed and pose a significant human health risk to Magnolia's occupants, including students like Kaden Porter and Lacey Morales and teachers like Plaintiff Beverly Hoy.

On May 29, 2015, Plaintiffs filed a class action complaint against Defendants in

---

[1] Defendant Senior Operations bought the property from Ametek approximately twenty years before Plaintiffs' case was filed. *See* Dkt. No. 43 at 22.

the Superior Court of the State of California in the County of San Diego. Def. Notice Removal, Dkt. No. 1. On June 25, 2015, Defendants removed the case to federal court under 28 U.S.C. § 1332(a). *Id.* On August 7, 2015, Plaintiffs filed an amended complaint, alleging claims for (1) negligence; (2) gross negligence; (3) public nuisance; and (4) strict liability (ultrahazardous activity). Dkt. No. 21 at 25-28. The complaint sought compensatory and punitive damages as well as medical monitoring costs. *Id.* at 24-28, 32.

Soon after, on August 24, 2015, Defendants filed separate motions to dismiss Plaintiffs' first amended complaint. Dkt. Nos. 24 & 25. On November 18, 2015, the Court granted in part and denied in part Defendants' motions. Dkt. No. 43. It held that Plaintiffs had sufficiently pleaded causes of action for negligence, gross negligence, and public nuisance, but that they had failed to adequately allege a claim for strict liability. *Id.* The Court, therefore, dismissed only Plaintiffs' fourth cause of action for strict liability (ultrahazardous activity). *Id.*

A few months after Defendants answered Plaintiffs' first amended complaint, Dkt. Nos. 51 & 52, and just a week after the parties submitted a joint discovery plan, Dkt. No. 58, Defendants separately moved for entry of a *Lone Pine* case management order, Dkt. Nos. 59 & 60. In these motions, Defendants asked the Court to issue an order — that is, a *Lone Pine* order, named after *Lore v. Lone Pine Corp.*, 1986 WL 637507 (N.J. Sup. Ct. Nov. 19, 1986) — requiring Plaintiffs to come forward with "prima facie evidence of exposure and causation before proceeding to expensive and time-consuming discovery and trial." Dkt. No. 60.

On June 28, 2016, the Court granted in part and denied in part Defendants' motions for entry of a *Lone Pine* case management order. Dkt. No. 71 ("CMO"). The Court found it appropriate to require each named Plaintiff to make a *prima facie* showing regarding his or her exposure, increased risk of specific injury and causation, but did not require that such an evidentiary showing be made as to any of the putative class members. Dkt. No. 71 at 7. The Court further ordered that each Plaintiff "produce

a case-specific report within ninety (90) days of the issuance of the CMO including the following information: (1) the identity of any hazardous substance(s) originating from the Ametek Property to which the Plaintiff was exposed; (2) the level of exposure to substance(s) from the Ametek Property claimed by Plaintiff, and whether such level of exposure presents a human health risk; (3) the route of exposure; (4) the relative increase in the chance of onset of a specific disease(s) in the Plaintiff as a result of the exposure, when compared to (a) the Plaintiff's chances of developing the disease had he or she not been exposed, and (b) the chances of the members of the public at large of developing the disease; (5) the clinical value of early detection and diagnosis with respect to each particular disease(s) that the Plaintiff seeks to screen through medical monitoring; (6) the scientific and medical bases for the expert's opinions and conclusions, including specific reference to the particular scientific and medical literature forming the basis of the expert's opinion. *Id.* at 7. The Court concluded by noting that "Any Plaintiff who fails to provide the case-specific expert report that complies with this Order . . . will be subject to having his or her claims dismissed with prejudice upon application to the Court by Defendants." *Id.* at 8.

In Defendants' objections to Plaintiffs' *Lone Pine* submission, filed January 3, 2017, they ask the Court to dismiss Plaintiffs' claims with prejudice for failing to make the required *prima facie* evidentiary showing and for failing to comply with the Court's *Lone Pine* order. Dkt. Nos. 84 & 85.

## **LEGAL STANDARD**

"*Lone Pine* orders are designed to handle the complex issues and potential burdens on defendants and the court in mass tort litigation." *Acuna v. Brown & Root Inc.*, 200 F.3d 335, 340 (5th Cir. 2000). Their "basic purpose is to identify and cull potentially meritless claims and streamline litigation in complex cases," *McManaway v. KBR, Inc.*, 265 F.R.D. 384, 385 (S.D. Ind. 2009) (citation omitted), and to achieve that purpose they "require[e] plaintiffs to produce some evidence to support a credible claim," *Steering Comm. v. Exxon Mobil Corp.*, 461 F.3d 598, 604 n.2 (5th Cir. 2006).

The Ninth Circuit has stated that district courts have authority to enter *Lone Pine* orders pursuant to their "broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure ("Rule") 16." *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011); *see also Acuna*, 200 F.3d at 340 ("In the federal courts, such orders are issued under the wide discretion afforded district judges over the management of discovery under Fed. R. Civ. P. 16."); Fed. R. Civ. P. 16(c)(2)(L) (authorizing courts to adopt "special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems."). A district court's decision to issue a *Lone Pine* order, therefore, is reviewed for an abuse of discretion. *See Avila*, 633 F.3d at 833.

Factors that courts consider when evaluating a *Lone Pine* request include (1) the posture of the action, (2) the peculiar case management needs presented, (3) external agency decisions impacting the merits of the case, (4) the availability and use of other procedures explicitly sanctioned by federal rule or statute, and (5) the type of injury alleged by plaintiffs and its cause. *In re Digitek Prod. Liab. Litig.*, 264 F.R.D. 249, 256 (S.D. W. Va. 2010). When courts find that these, or other factors, weigh in favor of exercising their discretion to issue a *Lone Pine*, they typically require the plaintiffs to make a *prima facie* evidentiary showing regarding the plaintiffs' exposure to the alleged toxic substances, what injuries they sustained, and how the defendants' actions caused those injuries. *See, e.g.*, David B. Weinstein, Christopher Torres, *An Art of War Lesson Applies to Mass Torts: The Lone Pine Strategy*, 14 NO. 1 ABA Envtl. Enforcement & Crimes Comm. Newsl. 14 (2013).

## **DISCUSSION**

Defendants Ametek and Senior Operations argue that Plaintiffs have failed to make a *prima facie* evidentiary showing as required by the Court's *Lone Pine* order. Defendant Ametek principally argues that Plaintiffs' submission is insufficient because it fails to state the essential elements required for a medical monitoring case under California law. Relatedly, Ametek argues that Plaintiffs have also failed to satisfy the

six requests made in the Court's CMO, all of which, they assert, are necessary to establish a *prima facie* case. Senior Operations, in turn, focuses on Plaintiffs' failure to address the fourth element of the Court's *Lone Pine* case management order, which directed Plaintiffs to show how exposure to the alleged chemicals increased the Plaintiffs' chances of developing health issues. The Court, however, disagrees that Plaintiffs have failed to make a *prima facie* evidentiary showing in support of their claims for negligence. Notwithstanding Defendants' many protestations to the contrary, Plaintiffs' case is not meritless or frivolous and, therefore, is not properly dismissed at this stage of the litigation pursuant to a *Lone Pine* order.

      The purpose of *Lone Pine* orders is to identify meritless toxic tort claims and to streamline litigation in the district court. *See McManaway*, 265 F.R.D. at 385. They are discretionary and are issued pursuant to the Court's authority, under Rule 16, to adopt special procedures for managing civil actions that involve "complex issues, multiple parties, difficult legal questions, or unusual proof problems." Fed. R. Civ. P. 16(c)(2)(L). A *Lone Pine*, however, is not a substitute for a motion for summary judgment. *McManaway*, 265 F.R.D. at 384. It only requires plaintiffs to produce "some evidence" of a "credible claim," *see Steering Comm.*, 461 F.3d at 604, not "substantial evidence," as Defendants contend, *see* Dkt. No. 85 at 8. Stated differently, the *Lone Pine* merely required Plaintiffs to produce "that information which [they] should have had before filing their claims pursuant to Fed. R. Civ. P. 11(b)(3)." *Acuna*, 200 F.3d at 340; *see also* Fed. R. Civ. P. 11(b)(3) (requiring that any pleading be supported by "factual contentions [that] have evidentiary support" or that will "likely have evidentiary support after a reasonable opportunity for further investigation or discovery").

      Plaintiffs have made such a production, here. Attached to their *Lone Pine* submission are the declarations of five experts who collectively opine on Plaintiffs' *prima facie* showing regarding exposure, increased risk of specific injury, and causation, along with the specific requests made in the Court's CMO. Those experts are

Anthony Brown, M.S., a hydrologist, James Wells, Ph.D., P.G., a professional geologist, Jill Powder, Ph.D., a board-certified toxicologist, Dr. Nachman Brautbar, M.D., a board-certified internist and nephrologist with a specialization in toxicology, and Dr. Cyrus Rangan, M.D., FACMT, a pediatrician and medical toxicologist.[2] While the Court generally agrees with Defendants that the expert reports do not adequately respond to the Court's fourth CMO request[3] and recognizes that Plaintiffs' experts are subject to *Daubert* objections, the Court does not find that such issues warrant dismissal with prejudice.

First and most importantly, Defendant Ametek is mistaken when it states that failure to comply with the Court's CMO amounts to a failure to establish a *prima facie* case of negligence. The Court's six CMO requests track California's five-factor test for proving medical monitoring damages in toxic tort cases. *See Miranda v. Shell Oil Co.*, 17 Cal. App. 4th 1651, 1657-58 (1993).[4] The *Miranda* factors, however, are not individual elements of a *prima facie* case for negligence, but rather, are factors that the trier of fact must weigh before concluding that plaintiffs are entitled to medical monitoring damages. *See Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1007 (1993) (adopting *Miranda*'s five-factor approach but noting that "[r]ecognition that a defendant's conduct has created the need for future medical monitoring does not create

---

[2] Plaintiffs' sixth expert, Angelo J. Bellamo, does not respond to the Court's CMO, but rather, addresses the California Department of Toxic Substances' alleged mishandling of the response to Defendants' dumping.

[3] The fourth request instructed Plaintiffs to compare their relative increase in the chance of developing a health problem, due to the exposure alleged in the complaint, with (a) the Plaintiffs' chances of developing that health issue regardless of exposure and (b) the chances that any given member of the public will develop the disease.

[4] The five *Miranda* factors are:
    (1) the significance and extent of the plaintiff's exposure to the chemicals;
    (2) the relative toxicity of the chemicals;
    (3) the seriousness of the diseases for which plaintiff is at an increased risk;
    (4) the relative increase in the plaintiff's chances of developing a disease as a result of the exposure, when compared to
        (a) plaintiff's chances of developing the disease had he or she not been exposed, and
        (b) the chances of members of the public at large developing the disease; and
    (5) the clinical value of early detection and diagnosis.
*Id.*

a new tort. It is simply a compensable item of damage when liability is established under traditional tort theories of recovery."). Eventually and at a later stage of this litigation, Plaintiffs will, indeed, have to contend with *Miranda* and make an evidentiary showing that the five factors weigh in favor of concluding that medical monitoring is necessary to compensate them to a reasonable degree of medical certainty. *See Miranda*, 17 Cal. App. 4th at 1658. For present purposes, however, the *Miranda* factors, and any CMO requests modeled after them, are merely a useful tool for the Court to evaluate whether Plaintiffs' claims as to exposure, injury, and causation have enough merit to warrant proceeding with discovery.

Plaintiffs' *Lone Pine* submission, and Defendants' objections to it, make evident that Plaintiffs' claims are not meritless, or frivolous, and that they are certainly not, as Defendants suggest, merely "irrational fears" designed to "incite public hysteria," *see* Dkt. No. 85 at 8. This is not a case where the plaintiffs have not alleged which chemicals they were exposed to as a result of the defendants' actions. *See In re 1994 Exxon Chemical Plant Fire Litig.*, 2005 WL 6522312, *2 (M.D. La. Apr. 7, 2005) (granting defendants' *Lone Pine* order, in part, because many plaintiffs had not even identified to which harmful substances they had been exposed). This is also not a case where the plaintiffs have failed to demonstrate what diseases or other health problems they were more likely to develop as a result of exposure. *See Acuna*, 200 F.3d at 340 (upholding district court's issuance of *Lone Pine* order because plaintiffs' pleadings did not provide defendants or court with notice "as to how many instances of which diseases were being claimed as injuries"). This is also, moreover, not a case where the plaintiffs are claiming that they have a present, identifiable injury that can be easily produced with minimal evidence before discovery begins. *See McManaway*, 265 F.R.D. at 389 (issuing *Lone Pine* order in case alleging plaintiffs suffered from hexavalent chromium poisoning because blood tests taken by the Army indicated that most plaintiffs did not have any significant levels of the toxin in their blood); *see also In re Vioxx Prods. Liab. Litig.*, 557 F Supp.2d 741, 744 (E.D. La. 2008) (issuing *Lone Pine*

because many plaintiffs, at an advanced stage of litigation, had not produced any evidence that the defendant's drug had caused them any personal injury).

This is a case concerning the increased health risks that Plaintiffs face as a result of being exposed to the chemicals that migrated to the Magnolia property from the Ametek property. A *prima facie* case of negligence requires a plaintiff to show that the defendant breached a legal duty of care owed to the plaintiff and that the breach was the proximate cause of the plaintiff's injuries. *See, e.g.*, *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 998 (2013) (citing *Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917-18 (1996)). Here, there does not appear to be any dispute that Ametek disposed of chemical substances that migrated onto the property below Magnolia. In fact, there is not even any dispute that Plaintiffs were exposed to those chemicals while working or attending school at Magnolia. *See* Dkt. No. 84 (wherein Defendant Senior Operations states "Given the extremely low levels and relatively short duration of alleged exposure at issue in this case . . . ."). Instead, the dispute, as framed by the parties' submissions to the Court, revolves around two narrow, but weighty, questions regarding the level of Plaintiffs' exposure to such chemicals and whether that level of exposure was harmful.

In response to the Court's *Lone Pine* order, Plaintiffs offered expert case reports that opine that Plaintiffs were exposed to a significant level of chemical toxins that has increased their risk of developing certain health problems. *See* Brown Decl., Dkt. No. 77-1 ("the Ametek site is the source of the soil and groundwater contamination detected beneath Magnolia"); Wells Decl., Dkt. No. 77-11 at 7 ("the groundwater contaminant plume was a continuous presence under Magnolia School from at least the 1980s to the present date."); Ryer-Powder Decl., Dkt. No. 77-13 at 17 ("The concentrations of TCE in indoor air exceed . . . safe concentrations"); Brautbar Decl., Dkt. No. 77-15 at 105 ("it is my expert medical opinion . . . . that the plaintiffs described above were exposed to substantially elevated, harmful levels of TCE and PCE. . . . . Exposure . . . presents a serious risk of developing latent diseases and cancers."), Rangan Decl., Dkt. No. 77-18 ("In this case, noncancer health risks for all 3 plaintiffs exceeded a Hazard Index of 1

1 . . . . Noncancer health conditions associated with the 4 chemicals in question include
2 primarily hepatic dysfunction, renal dysfunction, neurological dysfunction, and immune
3 dysfunction in exposed individuals."). Accordingly and keeping in mind that the
4 purpose of the *Lone Pine* is to identify meritless toxic tort cases, the Court concludes
5 that Plaintiffs' showing complies with the Court's *Lone Pine* order. *See Steering*
6 *Comm.*, 461 F.3d at 604 (*Lone Pine* requires plaintiffs to produce "some evidence" of a
7 "credible claim").

8 In reaching this conclusion, the Court specifically rejects Defendants' contention
9 that this suit must be frivolous because the California Department of Toxic Substances
10 Control ("DTSC") has concluded that Magnolia's occupants do not face any human
11 health risk as a result of the underground plume. *See* Dkt. No. 85 at 19 (emphasizing
12 that in November 2016 DTSC concluded that Magnolia is "safe for occupancy"); *see*
13 *also* Dkt. No. 84 at 11 (emphasizing that DTSC has concluded that "the groundwater
14 contamination does not pose any human health risk to students and employees at
15 Magnolia"). Defendants' contentions are no more persuasive to the Court, now, than
16 they were when rejected by this Court at the motion to dismiss stage. In its motion to
17 dismiss order, the Court specifically stated that any "previous determination" by DTSC
18 "would not be binding upon this Court" regardless of whether "it is true that the Water
19 Board and DTSC have in the past not found that the toxic vapor levels in the school
20 posed a significant risk to human health." Dkt. No. 43 at 12. The Court's conclusion,
21 therefore, remains the same. The DTSC's findings are not reason alone to prevent
22 Plaintiffs from proceeding with their case.

23 The Court further notes that its conclusion is also unaffected by Defendants'
24 numerous objections to Plaintiffs' experts, their opinions, and their reliability. As stated
25 previously, the purpose of a *Lone Pine* order is to cull potentially meritless claims, not
26 to replace a motion for summary judgment. *McManaway*, 265 F.R.D. at 384.
27 Accordingly and for this reason, it is not necessary to pass upon the reliability and
28 admissibility of the experts produced in order to conclude that Plaintiffs' evidentiary

showing states a *prima facie* case. *See In re Vioxx*, 557 F. Supp. 2d at 745 (stating that plaintiffs, in order to comply with the *Lone Pine* order, did not need to "provide expert reports sufficient to survive a *Daubert* challenge or even provide an expert who will testify at trial. Rather . . . [plaintiffs must] make a minimal showing consistent with Rule 26 that there is some kind of scientific basis that" defendant could have caused the injury."). There is little doubt, here, that Plaintiffs' experts have offered a scientific basis for concluding that the chemicals present in the air at Magnolia can cause harmful injuries and that the level of chemicals present was sufficient to cause such maladies. Accordingly, the Court declines Defendants' invitation to scrutinize Plaintiffs' *Lone Pine* experts as it would experts offered at summary judgment or at trial.

## **CONCLUSION**

For the foregoing reasons, the Court **DENIES** Defendants' objections to Plaintiffs' *Lone Pine* submission, Dkt. Nos. 84 & 85, and concludes that Plaintiffs' *Lone Pine* submission has satisfied the *prima facie* evidentiary burden imposed upon Plaintiffs by the Court. This case shall proceed forward in due course.

**IT IS SO ORDERED.**

Dated: July 17, 2017

Hon. Gonzalo P. Curiel
United States District Judge